FILED

MAR - 3 2014

CLERK U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA
BY                                    DEPUTY

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| STARCITY CAPITAL, LLC,<br><br>        Plaintiff,<br>vs.<br><br>BIO-MATRIX SCIENTIFIC GROUP, INC. and DAVID R. KOOS,<br><br>        Defendants. | CASE NO. 13-CV-1394 BEN (WMC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS FIRST AMENDED COMPLAINT**<br><br>[Docket No. 17] |

Presently before the Court is Defendants' Motion to Dismiss First Amended Complaint. (Docket No. 17.) For the reasons stated below, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**.

## BACKGROUND

Plaintiff Starcity Capital, LLC is a limited liability company organized and located in New York. (FAC ¶ 7.) Defendant Bio-Matrix Scientific Group, Inc. is a Delaware corporation with its principal place of business in San Diego County. (*Id.* ¶ 8.) Defendant David R. Koos is Bio-Matrix's Chairman of the Board of Directors and Chief Executive Officer. (*Id.* ¶ 9.)

On December 12, 2012, Starcity purchased a portion of a $700,000 promissory note between the Sherman Family Trust and Bio-Matrix for $30,000. (*Id.* ¶ 2.) Starcity and the Sherman Family Trust entered into a Securities Transfer Agreement ("STA"). (*Id.*; Koos Decl., Exh. A.) Pursuant to the STA, Sherman Family Trust transferred

"Transaction Rights" to Starcity, which permit Starcity to convert the debt into Bio-Matrix common stock at a 55% discount to the market price. (Koos Decl., Exh. A ¶ 1(d)(i).) Because the newly-issued stock is unregistered, it can be traded only if the criteria in Rule 144, 17 C.F.R. § 230.144,[1] are met. (*Id.* ¶ 2(f).) Starcity confirmed that the securities "may not be transferred" unless sales are made under Rule 144, "if such rule is available." (*Id.*)

On January 2, 2013, Starcity delivered to Bio-Matrix a "Conversion Notice" to convert $17,000 of the principal of its $30,000 promissory note into 103,030,303 shares of Bio-Matrix common stock. (FAC ¶ 13.) Bio-Matrix's transfer agent gave Starcity a paper stock certificate representing the shares. (*Id.* ¶ 14.) On January 15, 2013, Scottsdale Capital Advisors, Starcity's brokerage firm, informed Starcity that Bio-Matrix had not timely filed its Form 10-K and that Scottsdale Capital Advisors would not accept the shares into Starcity's account. (*Id.* ¶ 17.)

Starcity alleges that Bio-Matrix induced Starcity to cancel the paper stock certificate by falsely promising to cause the shares to be transferred to Starcity's brokerage account via Deposit/Withdrawal at Custodian ("DWAC").[2] (*Id.* ¶ 4.) Starcity alleges that Defendants then refused to initiate the DWAC transfer. (*Id.* ¶¶ 4, 5.) According to Starcity, because it did not have freely tradable shares, it missed the opportunity to sell in February 2013 when Bio-Matrix shares traded at $0.0144. (*Id.* ¶ 29.)

Starcity filed suit on April 12, 2013. The First Amended Complaint ("FAC") (the operative complaint) alleges: (1) securities fraud against Bio-Matrix and Koos; (2) common law fraud against Bio-Matrix and Koos; (3) negligent misrepresentation against Bio-Matrix and Koos; (4) breach of fiduciary duties against Koos; (5) breach of contract against Bio-Matrix; and (6) declaratory relief against Bio-Matrix.

---

[1] Under Rule 144(b), a non-affiliate may trade restricted shares of a reporting company if the shares have been held by a non-affiliate for six months, but only if current reports have been filed consistent with Rule 144(c)(1).

[2] Deposit/Withdrawal at Custodian is an electronic book entry stock transfer.

Presently before the Court is Defendants' Motion to Dismiss First Amended Complaint. (Docket No. 17.)

## DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), dismissal is appropriate if, taking all factual allegations as true, the complaint fails to state a plausible claim for relief on its face. FED. R. CIV. P. 12(b)(6); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (requiring plaintiff to plead factual content that provides "more than a sheer possibility that a defendant has acted unlawfully"). Under this standard, dismissal is appropriate if the complaint fails to state enough facts to raise a reasonable expectation that discovery will reveal evidence of the matter complained of, or if the complaint lacks a cognizable legal theory under which relief may be granted. *Twombly*, 550 U.S. at 556.

Defendants move to dismiss the first, second, third, and fourth claims. Each claim will be addressed in turn.

### I. CLAIM 1: SECURITIES FRAUD

The first claim for securities fraud alleges that "Defendants, Koos and [Bio-Matrix], prior to January 15, 2013, falsely advised Starcity that they would help expedite Starcity's sale of securities if Starcity returned and cancelled the Starcity [Bio-Matrix] Paper Stock Certificate. After return of the paper certificate, Koos and [Bio-Matrix] would electronically register such shares and then transmit the same number of shares to Starcity's brokerage account via DWAC; concealing and without disclosing to Starcity Defendants' true secret intentions never to electronically transmit such shares represented by the certificate to Starcity's broker via DWAC . . . ." (FAC ¶ 33.)

To successfully state a claim for securities fraud under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5, a plaintiff must allege: "(1) a material misrepresentation (or omission); (2) scienter, *i.e.*, a wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance . . . ; (5) economic loss;

and (6) loss causation." *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005) (citations and quotation marks omitted).

Scienter means to "act[] with intentionality or deliberate recklessness." *Ronconi v. Larkin*, 253 F.3d 423, 429 (9th Cir. 2001). "[T]he complaint shall . . . state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2)(A). Moreover, when allegations are made on information and belief, "the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1)(B). "With particularity" means that a plaintiff must provide "in great detail, all the relevant facts forming the basis of her belief." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 985 (9th Cir. 1999), *superceded by statute on other grounds*.

"To determine whether the plaintiff has alleged facts that give rise to the requisite 'strong inference' of scienter, a court must consider plausible, nonculpable explanations for the defendant's conduct, as well as inferences favoring the plaintiff. The inference that the defendant acted with scienter need not be irrefutable, i.e., of the 'smoking-gun' genre, or even the most plausible of competing inferences . . . . Yet the inference of scienter must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of other explanations. A complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 323-24 (2007).

Starcity has not alleged scienter in "great detail," as required. The allegations relating to scienter are conclusory, and many of them are based on information and belief. (*See* FAC ¶ 38 ("Plaintiff is *informed and believes* and based thereon alleges that in making the false statements and omissions alleged above, Defendants, and each of them, acted with the wrongful and malicious intent to deceive Plaintiff for the purpose of denying Plaintiff its 103,030,303 shares of [Bio-Matrix] stock, preventing and delaying the sale of such stock into the public market, and preferring some of [Bio-

Matrix]'s shareholders over Starcity, such that the preferred shareholders would be given first access to the liquid public market at preferred stock prices, ahead of Starcity."); *id.* ¶ 33 (alleging that Defendants had "true secret intentions never to electronically transmit such shares represented by the certificate to Starcity's broker via DWAC"); *id.* ¶ 26 ("Plaintiff is *informed and believes* that Defendants' actions . . . were taken with the intended purpose and effect of depriving Starcity of the opportunity to own and sell its 103,030,303 [Bio-Matrix] shares into a liquid public market while other preferred shareholders were permitted to sell their shares into the same public market ahead of Starcity.").) Such allegations are insufficient.

Starcity points to several allegations in the FAC that it argues demonstrate that: (1) Defendants promised to transmit the shares electronically as soon as the SEC reports were filed, as long as Starcity first sent a Paper Certificate Cancellation Notice; and (2) Starcity made clear to Defendants its intention to sell its shares into the public market, which would have hurt the stock price and value of shares held by other Bio-Matrix shareholders, including Koos. Starcity argues that "Defendants' many promises to record and transmit Plaintiff's shares via DWAC, both verbally and in the February 13, 2013 letter, support a strong inference of fraudulent intent." (Opp. at 19.) Based on these allegations, however, there is a strong inference that from January 25, 2013 to February 27, 2013, Defendants were attempting to file their SEC reports and to reissue Starcity's shares. At some point, Defendants "reversed course," changing their position as to the legal effect of the cancellation notice. (*See* FAC ¶¶ 18-24.) The inference of scienter is not as compelling as this opposing inference.

The FAC fails to state with particularity facts giving rise to a strong inference that Defendants acted with scienter. As this issue is dispositive, the parties' remaining arguments will not be addressed. Defendants' motion to dismiss the first claim is **GRANTED**. The first claim is **DISMISSED WITHOUT PREJUDICE**.

///
///

## II. CLAIM 2: COMMON LAW FRAUD

The second claim for common law fraud alleges that Defendants "falsely advised Starcity that if Starcity returned and cancelled the Starcity [Bio-Matrix] Paper Stock Certificate, Koos and [Bio-Matrix] would replace that certificate by electronic transmission of the same number of shares to Starcity's brokerage account via DWAC." (*Id.* ¶ 43.)

To successfully state a claim for common law fraud, a plaintiff must allege: (1) a misrepresentation, which includes a concealment or nondisclosure; (2) knowledge of the falsity of the misrepresentation (or "scienter"); (3) intent to induce reliance on the misrepresentation; (4) justifiable reliance; and (5) resulting damages. *Small v. Fritz Cos., Inc.*, 30 Cal. 4th 167, 173 (2003).

Here, Starcity has insufficiently alleged that Defendants had knowledge of the falsity of the alleged misrepresentation. The FAC contains only conclusory allegations regarding Defendants' knowledge of the falsity of the alleged misrepresentation, similar to the allegations of scienter in connection to the first claim. (*See* FAC ¶ 43 (alleging that Defendants failed to disclose to Starcity "Defendants' true secret intentions never to replace the Starcity [Bio-Matrix] Paper Stock Certificate with an electronic transmission of such shares to Starcity via DWAC"); *id.* (alleging that "Koos and [Bio-Matrix] never intended to replace Starcity's certificate representing Starcity's 103,030,303 shares of [Bio-Matrix] stock"); *id.* ¶ 48 ("Plaintiff is informed and believes and based thereon alleges that in making the false statements and omissions alleged above, Defendants, and each of them, acted with the wrongful and malicious intent to deceive Plaintiff for the purpose of denying Plaintiff its 103,030,303 shares of [Bio-Matrix] stock, preventing and delaying the sale of such stock into the public market, and preferring some of [Bio-Matrix]'s shareholders over Starcity, such that the preferred shareholders would be given first access to the liquid public market at preferred stock prices, ahead of Starcity.").)

The FAC does not sufficiently allege that Defendants had knowledge of the

falsity of the alleged misrepresentation. As this issue is dispositive, the parties' remaining arguments will not be addressed. Defendants' motion to dismiss the second claim is **GRANTED**. The second claim is **DISMISSED WITHOUT PREJUDICE**.

### III. CLAIM 3: NEGLIGENT MISREPRESENTATION

The third claim for negligent misrepresentation alleges that Defendants "falsely advised Starcity that if Starcity returned for cancellation the Starcity [Bio-Matrix] Paper Stock Certificate, Koos and [Bio-Matrix] would electronically transmit the same number of shares to Starcity's brokerage account via DWAC, without disclosing to Starcity Defendants' true secret intentions never to replace the Starcity [Bio-Matrix] Paper Stock Certificate with an electronic transmission of such shares to Starcity via DWAC." (FAC ¶ 54.) This false promise was "negligently ma[de]." (*Id.* ¶ 53.)

The parties disagree over whether this claim is properly characterized as a negligent false promise or a negligent misrepresentation. Defendants argue that this is a negligent false promise, which is not a valid claim. *See Tarmann v. State Farm Mut. Auto. Inc. Co.*, 2 Cal. App. 4th 153, 159 (6th Dist. 1991) (although "intentional false promise" is an actionable claim, a cause of action for "negligent false promise" does not exist). Starcity argues that this is a negligent misrepresentation claim, which is a valid claim. *See Friedman v. Merck & Co.*, 107 Cal. App. 4th 454, 475 (2d Dist. 2003) ("Negligent misrepresentation is a separate and distinct tort, a species of the tort of deceit." (internal quotation marks omitted)).

Whether this claim is properly characterized as a negligent false promise or a negligent misrepresentation turns on whether Defendants made a false statement regarding their intention to perform a future act or regarding a past or existing fact. *Compare Tarmann*, 2 Cal. App. 4th at 159 ("To maintain an action for deceit based on a false promise, one must specifically allege and prove, among other things, that the promisor *did not intend to perform* at the time he or she made the promise and that it was intended to deceive or induce the promisee to do or not do a particular thing." (emphasis added)), *with Friedman*, 107 Cal. App. 4th at 475-76 ("The elements of a

cause of action for negligent misrepresentation are: 1. The defendant must have made a *representation as to a past or existing material fact*; 2. The representation must have been untrue; 3. Regardless of his actual belief the defendant must have made the representation without any reasonable ground for believing it to be true; 4. The representation must have been made with the intent to induce plaintiff to rely upon it; 5. The plaintiff must have been unaware of the falsity of the representation; he must have acted in reliance upon the truth of the representation and he must have been justified in relying upon the representation. 6. And, finally, as a result of his reliance upon the truth of the representation, the plaintiff must have sustained damage." (internal quotation marks and alterations omitted) (emphasis added)). Here, Defendants' "false promise" to "electronically transmit the same number of shares to Starcity's brokerage account via DWAC" forms the basis of Starcity's claim. (FAC ¶ 54.) Accordingly, Starcity alleges that Defendants made a false statement regarding their intention to perform a future act. This claim is properly characterized as a negligent false promise claim, which is not an actionable claim.

        Starcity cites to Paragraph 53 of the FAC, which alleges that Defendants: "(i) intentionally or negligently with[eld] material information in connection with the foregoing factual misrepresentations which would have made Plaintiff aware that such statements were false; and (ii) intentionally or negligently ma[de] each of the misrepresentations alleged above." In its Opposition, Starcity explains Paragraph 53 as follows: "Defendants owed a duty to Plaintiff, when insisting that Plaintiff sign the Paper Certificate Cancellation Notice, to also tell Plaintiff that Defendants *intended* to construe that certificate, once executed, as a concellation [sic] of Plaintiff's conversion notice, and would accordingly cancel Plaintiff's 103,030,303 shares of [Bio-Matrix] stock and prevent or substantially delay Plaintiff's intended sale of those shares into the public market." (Opp. at 23 (emphasis added).) Starcity has failed to allege a negligent misrepresentation apart from the false promise to electronically transmit shares to Starcity's brokerage account via DWAC.

Because "negligent false promise" is not a valid claim, this claim fails. *See Motohouse Int'l, LLC v. PPG Indus., Inc.*, No. 09cv1265, 2010 WL 476652, at *2 (S.D. Cal. Feb. 4, 2010) (dismissing negligent misrepresentation claim based on promise of future performance). Defendants' motion to dismiss the third claim is **GRANTED**. The third claim is **DISMISSED WITHOUT PREJUDICE**.

### IV. CLAIM 4: BREACH OF FIDUCIARY DUTIES

The fourth claim for breach of fiduciary duties alleges that "Defendant, Koos, breached his fiduciary duties to Plaintiff when he wrongfully, through trickery and deceit, caused Plaintiff to return its Starcity [Bio-Matrix] Paper Stock Certificate to Defendants, Koos and [Bio-Matrix], based on their false promise that they would cause [Bio-Matrix] to transmit via DWAC to Starcity's broker the same number of shares promptly, then, after the Starcity returned its Starcity [Bio-Matrix] Paper Stock Certificate, failed and refused to transmit the 103,030,303 shares via DWAC, or otherwise." (FAC ¶ 63.)

Defendants argue that this claim should be dismissed because there is no causal connection between any actions taken by Koos while Starcity alleges to have been a shareholder—and therefore when Koos is alleged to have owed fiduciary duties—and Starcity's claimed damages. Specifically, Defendants argue that Starcity was not a shareholder after Starcity's paper stock certificate was canceled and during the time Defendants allegedly "failed and refused" to transmit the shares to or for the benefit of Starcity.

Starcity has sufficiently alleged a causal connection between Koos's actions taken while Starcity claims to have been a shareholder and Starcity's alleged damages. The FAC alleges that "[o]n January 2, 2013, Starcity delivered to [Bio-Matrix] its Conversion Notice stating its election to partially convert $17,000 of the principal of its portion of the $30,000 Note into 103,030,303 shares of common stock." (FAC ¶ 13.) In response to this Conversion Notice, Bio-Matrix sent the Paper Stock Certificate—reflecting Starcity's ownership of 103,030,303 of Bio-Matrix common

stock—to Starcity's stock broker, Scottsdale Capital Advisors LLC. (*Id.* ¶ 14.) "Plaintiff is informed and believes and based thereon alleges that Starcity did not rescind its Conversion Notice, and, having been issued its 103,030,303 shares of [Bio-Matrix] stock, it never relinquished or transferred ownership of such shares." (*Id.* ¶ 30.)[3] According to Starcity, Bio-Matrix and Koos "now take the unsupportable position that the Paper Certificate Cancellation Notice by Plaintiff of January 15, 2013 had the legal effect of rescinding the exercise by Plaintiff of its conversion rights." (*Id.* ¶ 22.)

Accordingly, Defendants' motion to dismiss the fourth claim is **DENIED**.

## CONCLUSION

For the reasons stated above, the Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. The first, second, and third claims are **DISMISSED WITHOUT PREJUDICE**. The fourth claim remains.

Plaintiff is **GRANTED** thirty (30) days from the date this Order is filed to file a Second Amended Complaint.

**IT IS SO ORDERED.**

DATED: March 3, 2014

HON. ROGER T. BENITEZ
United States District Judge

---

[3] Defendants argue that Starcity is unable to rely on Paragraph 30 of the FAC because this allegation is made on information and belief. When deciding a motion to dismiss, however, a court assumes that all of the allegations in the complaint are true. *Twombly*, 550 U.S. at 555-56.